UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF TENNESSEE
SOUTHERN DIVISION

IN RE: GINA GABRIELLA DAVIS     *     BK# 11-12163-NWW
                                              *
           DEBTOR                      *     CHAPTER 7

**DEBTOR'S BRIEF IN OPPOSITION TO MOTION TO COMPROMISE AND SETTLE A MEDICAL PRODUCTS LIABILITY CLAIM AND PAY ATTORNEY'S FEES, MEDICAL LIENS AND EXPENSES**
_____

**BRIEF**

Before the Court is Debtor's objection to Trustee's Motion to Compromise and settle a medical product liability claim and to pay attorney's fees, medical liens, and expenses.

Debtor objects because the underlying cause of action to be claimed is not property of the estate. The Trustee does not have the statutory authority to administer the asset.

At the June 14, 2018 call of this matter on the docket, this Court raised the case of *Tyler v. DH Capital Management, Inc.*, 736 F.3d 455 (6th Cir, 2013). The Court raised the points that the cases addressing the Statute of Limitations are different than cases arising under Federal Law of §541.

The *Tyler* case is helpful in the present case. Some important facts of the case are important to review.

- 2009, *Tyler* had incurred a $1,041.89 debt to Chase Bank Credit Card;
- October 14, 2010- Chase Bank assigned the debt to Turtle Creek Assets, LTD;
- October 26, 2010- Turtle Creek assigned the debt to DHC Capital Management, Inc., ("DHC");

- March 23, 2011- DHC sued *Tyler* in Jefferson County, Kentucky, State Court, seeking the debt balance plus 21% interest from February 27, 2009, plus attorney fees;
- June 28, 2011- service had not been effectuated;
- June 28, 2011- *Tyler* filed Chapter 7 bankruptcy. He did not list in his schedules any cause of action pending, nor the unliquidated counter-claim against DHC. * Chase Bank is listed as a creditor; DHC is not scheduled;
- October 12, 2011- debtor is served with the state court action where DHC is the plaintiff;
- October 18, 2011-the state court action is nonsuited;
- October 20, 2011- *Tyler* filed an Answer with no compulsory counter-claim. The affirmative defenses which were asserted were that DHC was not assigned the contract, merely the debt, and thus was not entitled to collect contractual attorney fees. Further, that the rate of interest was usury;
- October 26, 2011- the Order of Dismissal was entered for the state court action.
- March 9, 2012- *Tyler* is the named plaintiff in the class action.

Once the class action case was filed, DHC filed a Motion to Dismiss. There were various issues but for purposes of this discussion the district court ruled the claim was owned by the Trustee, as it was property of the estate. The U.S. District Court granted the dismissal because he had not amended his bankruptcy schedules to include the class action claims.

The Sixth Circuit ruled the cause of action was property of the estate, and affirmed the district court.

In *Butner v. United States*, 440 U.S.48, 99 S. Ct. 914, 59 I.Ed.2d 136 (1979), the Supreme Court pointed to the general rule that, "Congress has generally left the determination of property rights in the bankruptcy estate to state law. Property interests are created and defined by

state law. Unless some federal interest requires a different result, there is no reason why such interest should be analyzed differently simply because an interested party is involved in a bankruptcy proceeding. Uniform treatment of property interests by both state and federal courts within a state serves to reduce uncertainty, to discourage forum shopping, and to prevent a party from receiving "a windfall merely by reason of the happenstance of bankruptcy" Id. at 99 S. Ct. at 918.

It can be a tricky analysis to ascertain whether the "asset to be sufficiently rooted in the pre-bankruptcy past" that it becomes estate property. *Segal v. Rochelle*, 382 U.S. 375, at 380, 86 S.Ct.511.

*Tyler* pointed out that for there to be a cause of action that is property of the estate, there must be a pre-petition violation; facts alone will not root a claim as pre-petition. There must be a violation pre-petition. *Tyler*, 736 7.3d, at 462. *Tyler* also found in that all the elements of a cause of action were pre-petition so it satisfied the §541(a) definition.

*Tyler* stopped short of answering the questions *sub judice*, "we need not answer whether a cause of action, one or more of whose elements have not been satisfied at the time of the petition, may become pre-petition property." Id at 463. In *Tyler* the FDCPA action had occurred at the time of DHC filing a Complaint, thus bringing the claim into the bankruptcy estate; likewise, the usury claim was based upon the original contract, and was pre-petition actionable. Id at 464.

Following *Tyler* the Sixth Circuit revisited whether a cause of action is a pre-petition cause of action, and thus property of the estate under §541(a), or whether it is a post-petition asset of the debtor. *In re Underhill*, 579 Fed. Appx. 480 (2014) (unpublished opinion). The *Underhills* filed their personal bankruptcy and owed a 100% interest in Golf Chic Boutique, LLC, as an asset. The only pre-petition facts were that a competitor, Ladies Pro Shop had complained of Golf Chic's prices to their common supplier. Nothing more. However, post-petition there were more and different emails requesting the supplier to quit selling to Golf Chic. Only then, the suppler

then quit selling to Golf Chic hurting the business. An action in tort then arose followed by a suit. The settlement check from Ladies Pro was sent to counsel for Golf Chic, who forwarded the check to Mrs. Underhill. The bankruptcy case was re-opened. The Trustee sought to administer the settlement. Upon hearing, the bankruptcy court so ordered. "Despite the fact that the harm occurred post-petition, the bankruptcy court concluded that the cause of action was "sufficiently rooted in the [Underhills'] pre-bankruptcy past because the record "ma[d]e clear that events relating or giving rise to the claim occurred" [Pre-petition]. *Underhill*, (579 Fed. Appx., at 481.) The BAP affirmed. On appeal, the Sixth Circuit reversed and remanded.

The *Underhill* Court summarized the Sixth Circuit standards for determining when a cause of action with some facts being pre-petition, becomes property of the estate under § 541(a).

It recognized the filing of a petition under §301 begins on a case, and the estate consists of the legal or equitable intents of the debtor as of the commencement of the case. (§541(a)). It reviewed the Sixth Circuit precedent, and stated "state substantive law determines the "nature and extent" of causes of action." [Citing *Tyler*] Federal Bankruptcy Law dictates when the property interest becomes property of the estate for purposes of § 541." *Underhill* at 482.

The *Underhill* Court reiterated, **"a cause of action qualifies as bankruptcy estate property only if the claimant suffered a pre-petition injury."** Id.

In applying this standard, the *Underhill* Court found no pre-petition injury and reversed the Bankruptcy Court ruling in favor of the Trustee and remanded the case for disposition.

In her dissenting opinion, Judge Donald focused on behavior of the defendant in 2009, pre-petition. This pre-petition "conduct", she deemed, was sufficient to bring the cause of action into the property of the estate. The "conduct" was a series of complaints about pricing, which had no pre-petition injury Id., at 483. Notwithstanding the existence "conduct" the majority of the *Underhill* Court disagreed with the dissent and concluded there was no injury pre-petition. Even though there were pre-petition facts, there was no pre-petition injury. Without any pre-petition

injury there was an inadequate connection to pre-petition acts to render the post-petition accrual of the cause of action for it to be property of the estate.

There is a pelvic mesh case here in the Sixth Circuit which is of precedential valve to the present case at bar, where the Court cited *Underhill* and determined that a post-petition injury arising from a pre-petition surgical mesh implant was not sufficiently rooted in the pre-petition "conduct" for the mesh injury claim to become property of the estate. The case is directly on point to the present case: In re *Segura*, 2016 WL 829830. (Bankr. N.D.Ohio, 2016).

The facts in *Segura* where there was a pre-petition surgery in which pelvic mesh was inserted. Mrs. Segura was pain free and filed Chapter 7 in 2007. After the bankruptcy was over she experienced pain and some of the mesh was surgically removed in 2012. Debtors retained counsel in 2012, and thereafter participated in a large multidistrict litigation.

In 2015, the Chapter 7 Trustee was notified of the mesh litigation settlement. Before the bankruptcy court was the issue of whether the mesh claim was property of the bankruptcy estate.

The *Segura* Court reviewed the case law (discussed above) starting at *Segal*, then *Tyler*, then *Underhill*. The *Segura* Court concluded the injuries from the pelvic mesh product did not arise pre-petition. Mrs. Segura testified she experienced no injury or no harmful effect resulting from the pre-petition surgery until years after she had filed Chapter 7 bankruptcy.

The Segura Court wrote:

> Unlike the facts of *Segal*, a critical predication for debtor's cause of action, namely, injury proximately, caused by the pelvic mesh, did not exist pre-petition. It is not enough that the causes of action have some root in pre-petition conduct or facts they must be "sufficiently" rooted. *See Segal*, 382 U.S. at 380. As in *Underhill*, without proof of a pre-petition injury, the court finds the debtor's causes of action are not "sufficiently rooted" in their pre-bankruptcy past and, then, are not assets of the debtor's bankruptcy estate. Accordingly, the proceeds of the MDL litigation to which debtors may be entitled are not bankruptcy assets that may be administered by the Trustee.

*Segura*, 2016 WL 829830, at p3.

We conclude that the Sixth Circuit law is that a pre-petition mesh implant must cause a pre-petition injury before it may be §541 (a) property of the estate. The concept has been applied in all mesh cases. For example, *In re Carroll*, 2018 WL 2754487, (Bankr. E.D.Calif.), held where the pre-petition surgery had caused the debtor to have pain and multiple surgeries for mesh removal and corrective surgeries, then the cause of action was in fact property of the estate, even though the debtor did not know she had a right to sue.

In the case of *In re Vasquez*, 581 B.R.59, (Bankr. Vermont, 2018), the debtor had a pre-petition mesh implant, and although she had continuing medical issues, there was no proof the debtor had any pre-petition injury and the cause of action was not property of the estate.

In the case of *In re Parcell*, 573 B.R.859, (Bankr. D. Kansas, 2017), the debtor filed Chapter 13 in 2008. She completed her confirmed Chapter 13 plan, and was discharged on September 23, 2011. After her discharge, but before the Trustee had filed his Final Report on September 28, 2011 she had her surgical mesh implanted. The Final Report was in October 2011, and the case closed November 30, 2011. She experienced pain in January 2013, and following the settlement, the Chapter 13 Trustee sought the recovery. Debtor had no injuries until well after the case was closed and the Trustee was denied the turn over.

In the case *Mendelssohn v. Ross* (*In re Ross*) 251 F. Supp.3d 518 (E.D.N.Y. 2017) Debtor's pre-petition mesh had caused no pre-petition injury prior to her filing Chapter 7, and it did not appear defective until years after the Chapter 7. When debtor's Trustee sought to administer the mesh claim settlement proceeds, he was denied that opportunity because there was no pre-petition injury.

### **Summary**

The Sixth Circuit law from *Tyler, Underhill*, and thereafter, requires a pre-petition injury. Debtor Ms. Davis had a pre-petition mesh implant. She filed her Chapter 7 case. Years after the Chapter 7 she had the first sign of injury. There were no pre-petition indications of pre-petition

injury. Like all the cases cited above, where there is no pre-petition injury there is no sufficiently rooted link to the pre-petition facts because there was no pre-petition injury. In those other cases the courts rightly concluded the cause of action was property of the estate. The same result must logically follow in this case.

      Ms. Davis had no pre-petition injury and no pre-petition damages. At the time of filing, there had not been any evidence of breach of duty to the debtor, nor any injury, nor any damages. Based on Sixth Circuit precedent, there is no basis to conclude that the mesh claim is property of the estate, and none of the settlement may be administered by the Trustee. The Trustee must turn over the recovery in its entirety. The court must deny the Trustee's Motion.

Respectfully Submitted:
KENNETH C. RANNICK, P.C.

/s/ Kenneth C. Rannick
Kenneth C. Rannick, #11106
LuAnn M. Whaley, #023085
4416 Brainerd Road
Chattanooga, TN 37411
423/624-4002 telephone
423/624-0509 facsimile
rannick@lawyerchattanooga.com e-mail

## CERTIFICATE OF SERVICE

       The undersigned hereby certifies that a true and exact copy of this Motion has been served upon the parties listed below electronically or by placing the same in the United States Mail with sufficient postage thereupon to carry it to its destination, dated April 6, 2018.

                                              /s/ Kenneth C. Rannick
                                              Kenneth C. Rannick, #11106

Robert Wilkinson, Trustee

Nancy A. Cogar, Attorney for Trustee
Law Offices of Nancy A. Cogar, Esq.

Gina Gabriella (Penny) Davis
10049 Miller Road
Soddy Daisy, TN 37379