

**SIGNED this 27th day of July, 2018**

/s/ Nicholas W. Whittenburg
**Nicholas W. Whittenburg**
**UNITED STATES BANKRUPTCY JUDGE**

_____

# IN THE UNITED STATES BANKRUPTCY COURT FOR
# THE EASTERN DISTRICT OF TENNESSEE

| | | |
|---|---|---|
| **In re:** | ) | |
| | ) | |
| **Gina Gabriella Davis** | ) | **No. 1:11-bk-12163-NWW** |
| | ) | **Chapter 7** |
| | ) | |
| **Debtor** | ) | |

# M E M O R A N D U M

This case is before the court on the Trustee's Motion to Compromise and Settle a Medical Product Liability Claim and to Pay Attorney Fees, Medical Liens and Expenses that was filed on March 16, 2018. The debtor does not challenge the reasonableness of the settlement. Rather, she opposes the motion on the ground that the funds do not constitute property of the bankruptcy estate that the trustee may administer. After considering the evidence and the parties' briefs and arguments, the court now makes its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure as made applicable in bankruptcy contested matters by Rules 7052 and 9014(c) of the Federal Rules of Bankruptcy Procedure.

## I. FACTUAL BACKGROUND

Based on the stipulation of the parties and the testimony of the debtor, the court finds the following facts. The debtor had a hysterectomy in April 2008. As part of the surgical procedure, a mesh sling was implanted. The debtor experienced no complications following the surgery.

On April 21, 2011, the debtor filed a voluntary petition for relief under chapter 7 of the Bankruptcy Code and received a discharge on August 1, 2011. On August 23, 2011, the trustee filed a report of no distribution, and the case was closed on September 22, 2011.

On August 31, 2012, a complaint was filed in the United States District Court for the Southern District of West Virginia initiating multidistrict litigation against manufacturers of mesh devices, including the manufacturer of the device that was implanted in the debtor, asserting claims under various theories including strict product liability.

In March 2015, the debtor began experiencing discomfort in her urinary tract. The pain became unbearable over the next several months and, in October, the debtor consulted physicians and underwent a 3D ultrasound procedure. One of her doctors was of the opinion that the pain was the result of the mesh product being too tight around the urethra and recommended surgery, which was performed. The mesh device was not removed but was "revised." Around the same time, the debtor did some research into the possibility of asserting a legal claim, and found a 2011 document issued by the United States Food and Drug Administration discussing problems relating to mesh

devices.[1] The debtor first contacted an attorney about pursuing her legal remedies in October 2015.

The pain continued, and again became unbearable by March 2016, when the debtor again had surgery. This time, a portion of the mesh device was removed and the remaining portion was revised to loosen tightness around the urethra. The debtor has not since that time suffered discomfort in her urinary tract. In 2016, the debtor was informed that she would be entitled to share in a settlement of the West Virginia multidistrict litigation.

At some point, the United States trustee became aware of the settlement and, on July 10, 2017, filed a motion to reopen the case, which was granted the following day. On March 16, 2018, the chapter 7 trustee filed a motion to approve the compromise and settlement in the amount of $120,261.99, and the debtor filed an objection on April 6, 2018.

## II. LEGAL ANALYSIS

The commencement of a bankruptcy estate "creates an estate . . . comprised of . . . all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). "The main thrust of [§ 541, like it's predecessor] § 70a(5) [of the former Bankruptcy Act,] is to secure for creditors everything of value the [debtor] may possess in alienable or leviable form when he files his petition. To this end the term 'property' has been construed most generously and an interest is not outside

---

[1] That notification and the FDA's 2008 notification on the same subject are discussed below.

its reach because it is novel or contingent or because enjoyment must be postponed." *Segal v. Rochelle*, 382 U.S. 375, 379 (1966). To constitute property of the debtor at the time the petition is filed and so to come into the bankruptcy estate at that time, a right must be "sufficiently rooted in the pre-bankruptcy past and so little entangled with the [debtor's] ability to make an unencumbered fresh start that it should be regarded as 'property' under [what is now § 541]." *Id.* at 380.

The United States Court of Appeals for the Sixth Circuit has expanded on these principles when the asset in question is a cause of action. In *Tyler v. DH Capital Management, Inc.*, 736 F.3d 455 (6th Cir. 2013), one of the questions presented was whether a cause of action for a violation of the Fair Debt Collection Practices Act became property of the estate upon the filing of the bankruptcy petition so that only the trustee had standing to pursue the claim. The court adopted two specific concepts:

> First, pre-petition conduct or facts alone will not "root" a claim in the past; there must be a pre-petition violation. In this case, for example, the mere fact that the debt was incurred years before the bankruptcy is irrelevant to the analysis—the question is when the violation occurred.
>
> Second, all causes of action that hypothetically could have been brought pre-petition are property of the estate. This is the case "even if the debtor[ ] w[as] unaware of the claim." Further, the entire cause of action is property of the estate, even if further post-petition damages were incurred.

*Id.* at 462-63 (citations omitted). The court concluded that the claim was property of the estate because the FDCPA violation occurred upon the filing of the complaint against the debtor prior to the commencement of his bankruptcy case.[2] *Id.* at 463.

---

[2] In so holding, the court rejected the argument that the determination of when a violation occurs is controlled by when the cause of action accrues for the purpose of starting the running of the statute of limitations. *Tyler*, 736 F.3d at 463-64.

Ten months later, the Sixth Circuit was again called upon to determine whether a cause of action is property of the bankruptcy estate. *Underhill v. Huntington National Bank (In re Underhill)*, 579 F. App'x 480 (6th Cir. 2014), involved a settlement of business tort claims based on a competitor's actions resulting in the debtors' company losing a contract with a supplier. Some of the defendants' conduct took place prepetition, but that conduct did not result in the cancellation of the debtors' company's contract until after the commencement of the bankruptcy case. *Id.* at 481. The debtors' position was that the cause of action was not property of the estate because the injury had not occurred at the time the case was commenced, *id.*, and a majority of the panel agreed, holding that "a cause of action qualifies as bankruptcy estate property only if the claimant suffered a pre-petition injury."[3] *Id.* at 482 (citations omitted).

Applying the principles articulated in *Tyler* and *Underhill*, the task before the court is to take a snapshot as of April 21, 2011, and determine whether, as of that date, the debtor had a product liability claim that was "sufficiently rooted in the pre-bankruptcy past." In order to be so rooted, the claim must be at least "minimally actionable" by the date that the bankruptcy case was commenced. *Tyler*, 736 F.3d at 464. If on that date the debtor could have asserted a minimally actionable product liability claim for damages against the manufacturer of her mesh device, then the settlement of the cause of action would be property of the debtor's bankruptcy estate.

---

[3] Judge Bernice Donald, once a bankruptcy judge, dissented, contending that, since some of the conduct occurred prepetition and the debtors were aware of the conduct prepetition, the claims were "'sufficiently rooted in the pre-bankruptcy past' to make them assets of the Underhills' bankruptcy estate." *Underhill*, 579 F. App'x at 484 (Donald, J., dissenting).

There is no question that any act or omission by the manufacturer giving rise to any product liability cause of action of the debtor took place prepetition, because that is when the mesh device was designed, manufactured, and surgically implanted. However, in order to have a minimally actionable products liability action, regardless of the legal theory advanced, the individual must suffer personal injury, death, or property damage caused by the defective or unreasonably dangerous product. Tenn. Code Ann. § 29-28-102(6).[4] Thus, resolution of the pending dispute turns on a determination of whether the debtor suffered an injury caused by the mesh device prior to filing her bankruptcy petition.

The trustee contended at the hearing on his motion that two documents issued by the United States Food and Drug Agency demonstrate that the debtor suffered an injury upon the implantation of the mesh device. The parties have stipulated that the FDA issued a Public Health Notification on October 20, 2008, noting that it had received more than 1,000 complaints regarding pelvic mesh products over a three-year period.

---

[4] The provision of the Tennessee Products Liability Act of 1978 cited in the text defines "product liability action" broadly to include an action under any legal theory for acts or omissions in any way related to a defective product that causes personal injury, death, or property damage:

> "Product liability action" for purposes of this chapter includes all actions brought for or on account of personal injury, death or property damage caused by or resulting from the manufacture, construction, design, formula, preparation, assembly, testing, service, warning, instruction, marketing, packaging or labeling of any product. "Product liability action" includes, but is not limited to, all actions based upon the following theories: strict liability in tort; negligence; breach of warranty, express or implied; breach of or failure to discharge a duty to warn or instruct, whether negligent, or innocent; misrepresentation, concealment, or nondisclosure, whether negligent, or innocent; or under any other substantive legal theory in tort or contract whatsoever.

(Stipulation of Certain Facts ¶ 6.) The trustee did not attempt to admit the notification into evidence and, accordingly, it is not part of the record. Based on the parties' stipulation it does not appear that the FDA notice made any finding regarding the number of mesh products sold or implanted, the nature of the complaints, or even how long after the device was implanted the complaints were reported. From the notification alone, as summarized by the parties' stipulation, it is simply impossible for the court to determine the probability that any particular patient receiving a mesh implant will suffer an injury or when any such injury will occur.

The parties further stipulated that, on July 13, 2011, the FDA issued a Safety Communication Update, advising that serious complications associated with transvaginal placement of surgical mesh devices were "not rare." (Stipulation of Certain Facts ¶ 7.) The 2011 update was also not presented to the court and is not part of the record. The fact that the update states that complications associated with mesh devices are "not rare" does not demonstrate with sufficient certainty the likelihood that any particular mesh implant patient will suffer an injury or when such injury will occur. Even assuming that the notification and update dealt with the specific type of mesh device implanted in the debtor,[5] those documents are vague and generalized and provide at best only circumstantial evidence that the court finds insufficient to prove that the debtor in this case actually suffered any injury or harm related to the mesh device at any time prior to the commencement of this bankruptcy case.

---

[5] The manufacturer and specific device have not been disclosed to this court due presumably to confidentiality restrictions that are part of the settlement of the multidistrict litigation.

This court finds the court's decision *In re Segura*, Case No. 07-31907, 2016 WL 829830 (Bankr. N.D. Ohio March 2, 2016), instructive to resolve the present case. In that case, Ms. Segura had a pelvic mesh product implanted in 2006 and remained pain free for several years. She and her spouse filed a bankruptcy petition in 2007 and the case was closed later that year. Then, in 2012, the mesh product was removed surgically and the debtors sued or joined in multidistrict litigation. The trustee moved to reopen the bankruptcy case to administer the debtors' share of the settlement in the multidistrict litigation. *Id.* at *1. The court discussed § 541, *Segal v. Rochelle*, *Tyler*, and *Underhill*, then denied the trustee's motion reasoning as follows:

> [T]he court finds that Debtors' causes of action based upon injuries resulting from the use of the pelvic mesh product are not sufficiently rooted in their prebankruptcy past to be considered assets of their bankruptcy estate. The pelvic mesh product was implanted in Angela Segura prepetition. But she credibly testified that she experienced no injury, that is, no harmful effect, resulting therefrom until well after Debtors' petition had been filed. Nevertheless, the Trustee contends that Ms. Segura's injury is the implantation of the defective product itself and thus that her injury occurred prepetition. The court disagrees. "In any product liability case, whether based in common law or statute, a plaintiff must prove that the product defect proximately caused [her] injury." Thus, in order to have an interest in a product liability cause of action, "injury" requires more than simply being exposed to a defective product or, as in this case, having a defective product implanted in the body. It must also cause some injury. Although Ms. Segura testified that the pelvic mesh eroded and that the erosion is the cause of her injuries, there is no evidence that the erosion began at the time the pelvic mesh was implanted and no evidence of the cause of the erosion or that it was inevitable at the time it was implanted. On the evidence before it, the court finds that Ms. Segura's injuries, and thus any injury incurred by Gregory Segura with respect to his derivative consortium claim, occurred postpetition at or around the time that Ms. Segura began experiencing pain.
>
> Unlike the facts in *Segal*, a critical predicate for Debtors' causes of action, namely, injury proximately caused by the pelvic mesh, did not exist prepetition. It is not enough that the causes of action have some root in prepetition conduct or facts, they must be "sufficiently" rooted. As in *Un-*

> *derhill*, without proof of a prepetition injury, the court finds that Debtors' causes of action are not "sufficiently rooted" in their prebankruptcy past and, thus, are not assets of Debtors' bankruptcy estate. Accordingly, the proceeds of the MDL litigation to which Debtors may be entitled are not bankruptcy assets that may be administered by the Trustee.

*Id.* at *3 (citations omitted).

Likewise, the debtor in this case credibly testified that she suffered no adverse effects from or related to the mesh device until four years postpetition. In fact, the parties stipulated that the debtor "experienced no obvious physical complications involving the mesh implantation before the petition date." (Stipulation of Certain Facts ¶ 9.) The trustee presented no expert testimony or other evidence – if such evidence even exists – that the debtor actually suffered any physical injury caused by the implant prior to the petition date. There is no evidence that erosion of the implant began prepetition. In fact, while the debtor is entitled to participate in the settlement because she received the mesh implant, there is insufficient evidence that the urinary tract problems she experienced postpetition were even caused by the mesh implant.

The trustee relies heavily on *Rye v. Women's Care Center of Memphis, MPLLC*, 477 S.W.3d 235, 267 (Tenn. 2015), for the proposition that "Tennessee state law provides for a right of recovery in medical cases when the manifestation of the physical injury has not yet occurred, but it is reasonably likely to happen in the future." (Br. and Legal Argument in Supp. of Trustee's Mot. to Approve Settlement and Resp. to Debtor's Obj., at 2-3.). The Trustee's reliance on *Rye* is misplaced. That case involved a health care liability action against a hospital and a doctor arising out of obstetrical services provided to Ms. Rye. *Id.* at 238. The defendants argued that they were entitled to summary judgment because Ms. Rye had suffered no damages. *Id.* at 265. While the parties sub-

mitted competing expert testimony as to whether Ms. Rye had incurred a physical injury, the Tennessee Supreme Court found that summary judgment could be granted despite the genuine issue of material fact arising out of this difference of opinion. *Id.* at 266. Rather, the court assumed that Ms. Rye had sustained a physical injury and found the dispositive question to be "whether Mrs. Rye is reasonably certain to sustain damages for future medical expenses as a result of her [assumed injury]." *Id.* After carefully reviewing the record, the court found that the proof relied on by Ms. Rye to establish future medical damages as a result of the assumed injury was too speculative to present a genuine issue of fact necessitating a trial and granted the defendants' motion for summary judgment. *Id.* at 269.

In the context of a motion for summary judgment, the *Rye* court properly assumed that the debtor suffered an injury. In the context of this case, however, the court may not simply assume the debtor suffered an injury caused by the mesh implant prior to the petition date. To decide whether the proceeds of the cause of action constitute property of the estate, this court must determine whether the parties' stipulation and the debtor's testimony demonstrate that the debtor was injured and that she was injured prior to the commencement of her bankruptcy case. As discussed previously, there is simply insufficient evidence to support a finding that the debtor suffered a prepetition injury. The trustee's contention that the debtor could have sued the manufacturer of the mesh device at any time after its implantation in 2008 is mere conjecture unsupported by the record in this case.

The trustee submits that "in all mesh class action/MDL cases the Debtor/patients are always entitled to a sum of money – more or less – regardless of when the mesh

-10-

was implanted... Patients get more if they have had surgeries and less if there has been no harm yet." (Br. and Legal Argument in Supp. of Trustee's Mot. to Approve Settlement and Resp. to Debtor's Obj., at 5.) The trustee appears to argue that, because the debtor in this case received the implant prepetition and because that fact alone gives her a right to participate in the settlement of the multidistrict litigation, the debtor's right under the settlement agreement constitutes property of the estate. The trustee's argument is flawed.

    First, since the settlement agreement has not been admitted into evidence, the court cannot find that the trustee's factual assertion is correct. However, assuming the settlement agreement does in fact afford the debtor the right to share in the settlement without proof of injury simply because she was implanted with the mesh device, the settlement proceeds are nevertheless not property of the estate even though the device was implanted prepetition. It is undisputed that the settlement agreement only arose after the commencement of the chapter 7 bankruptcy case. The debtor's contractual right under the settlement, therefore, arose following the petition date. The trustee incorrectly equates the debtor's postpetition contractual right to share in the settlement with the existence of a product liability cause of action that was "minimally actionable" on the petition date. Because the settlement agreement was made postpetition, the debtor's right of recovery under the agreement cannot constitute property of her bankruptcy estate unless the recovery is proceeds of a prepetition cause of action that is property of the estate. *See* 11 U.S.C. § 541(a)(6) (including in the definition of property of the estate "[p]roceeds . . . of or from property of the estate"). If the recovery is not in consideration of the settlement and release of a product liability cause of action

that was minimally actionable on the petition date, then it cannot constitute proceeds of property of the estate because the settled cause of action is not property of the estate.

As previously discussed, the bankruptcy estate does not include a product liability cause of action because the proof is insufficient to conclude that the debtor suffered a prepetition injury caused by the implanted mesh device. The settlement agreement resolves a cause of action that arose postpetition (if at all) because the debtor did not suffer an injury caused by the mesh device (if at all) until after the commencement of this case. It follows that the recovery under the settlement agreement is not proceeds of property of the estate. If the settlement of the multidistrict litigation had been reached prior to the commencement of this case and the debtor were entitled to share in the proceeds of the settlement, then the outcome might be different. Under this hypothetical, the debtor's legal or equitable interest in the settlement proceeds, rooted in a prepetition settlement agreement, would likely constitute property of the estate.[6]

### III. CONCLUSION

Because the evidence is insufficient to support a finding that the debtor in this case suffered an injury on or before April 21, 2011, as a result of the mesh device implanted on April 8, 2008, the debtor did not have a legal or equitable interest in a product

---

[6] The trustee's brief asserts in passing and without citations to legal authority that the debtor's failure to object to the reopening of the case and the trustee's retention of special counsel may give rise to an estoppel defense. The trustee did not rely on that contention at the hearing on his motion and, in any event, the trustee introduced no evidence of any reliance on the debtor's silence or other prejudice resulting from the reopening of the case or the retention of special counsel, and none is apparent to the court.

liability claim that became property of the bankruptcy estate upon the filing of her chapter 7 petition. Accordingly, the debtor's right to recovery under the settlement of any product liability claim she has is not property of the estate that the trustee may administer. The court will, therefore, deny the trustee's motion to approve the compromise and settlement.

###